## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND ALEXANDER,                    :

        **Plaintiff**          :     **CIVIL ACTION NO. 3:04-0370**

    **v.**                :          **(VANASKIE, D.J.)**
                                    **(MANNION, M.J.)**

**JIM FORR, JEFFREY BEARD, THOMAS JAMES, SHARON BURKS, TSHANNA KYLER, DONALD WILLIAMSON, ROBERT BITNER, ROBERT SHANNON, J. KERESTES, J.D. SHUTT, DAVID SEARFOSS, KEVIN KANE, PETE DAMITER, RUSSELL SCHEUREN, CINDY WALASAVAGE, DAVID POPEK, E. POGIRSKI, F. PATRICK DAVISON, C.O. MILLER, CAPT. DURANT, CAPT. MIZENKO, LT. POPSON, OFFICER O'DAY, C.O. HARNER, C.O. KINTZEL, C.O. KIEFABOR, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, WILLIAM WOLFE, RON BRYANT, CAROLYN CHEEK, and DAN HENRY,**

              **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## REPORT AND RECOMMENDATION

Before this court is a motion for summary judgment by defendants Forr, Shannon, Kerestes, Shutt, Searfoss, Kane, Damiter, Scheuren, Walasavage, Popek, Davison, Miller, Durant, Mizenko, Popson, O'Day, Harner, Kintzel, and Kiefabor (collectively, "moving defendants"). (Doc. No. 46.)

## I.    Procedural History

Plaintiff Alexander, presently an inmate at the State Correctional Institution at Mercer, Pennsylvania, and formerly incarcerated at the State

Correctional Institutions at Albion ("SCI-Albion") and Frackville ("SCI-Frackville"), commenced this pro se civil rights action pursuant to 42 U.S.C. § 1983 on February, 23, 2004, by filing a complaint against defendant Forr, former grievance coordinator at SCI-Frackville.  (Doc. No. 1.)  The complaint alleges that defendant Forr violated the plaintiff's right to free speech in violation of the First Amendment.  (Doc. No. 1.)  On May 14, 2004, defendant `Forr answered the complaint.  (Doc. No. 5.)  The plaintiff on May 24, 2004, submitted his response to defendant Forr's answer.  (Doc. No. 6.)

On June 10, 2004, the plaintiff moved to amend his complaint and submitted a memorandum of law in support of the motion and a proposed amended complaint.  (Doc. Nos. 7, 8, & 9.)  Defendant Forr on June 28, 2004, submitted a certificate of concurrence in the plaintiff's motion to amend the complaint.  (Doc. No. 11.)  On July 1, 2004, the court granted the plaintiff's motion to amend the complaint and accepted the proposed amended complaint.  (Doc. Nos. 12 & 9.)  The amended complaint reiterates the claim against defendant Forr and alleges that the other thirty-five defendants violated the plaintiff's civil rights under the First and Fourteenth Amendments. (Doc. No. 9.)

The court ordered the plaintiff to serve the summons, which was issued by the clerk of court, and amended complaint upon the new parties within thirty days.  (Doc. No. 12.)  On August 26, 2004, defendants Forr, Shannon, Kerestes, Shutt,  Searfoss, Kane, Damiter, Scheuren, Walasavage, Popek,

2

Davison, Miller, Durant, Mizenko, Popson, O'Day, Harner, Kintzel, and Kiefabor executed a waiver of service. (Doc. No. 17.) To date, there is no record that the other named defendants–defendants Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe, Bryant, Cheek, and Henry (collectively, "unserved defendants")–have been served.   Nor have unidentified defendants John Does 1, 2, 3, 4, 5, and 6 (collectively, "unidentified defendants") been identified and served.[1]

On July 6, 2004, the plaintiff moved to file a supplemental response to defendant Forr's answer to the complaint, which the plaintiff submitted with his motion and which the court granted on July 7, 2004. (Doc. Nos. 13, 14, & 15.) The plaintiff submitted a memorandum in support of his motion on July 14, 2004. (Doc. No. 16.)

Subsequent to an order granting an enlargement of time, the moving defendants answered the plaintiff's amended complaint on October 1, 2004. (Doc. Nos. 18, 19, & 20.) The plaintiff responded to the answer on October 12, 2004. (Doc. No. 21.)

On January 10, 2005, the court ordered that all discovery and dispositive motions were due by April 10, 2005. (Doc. No. 22.) The plaintiff appealed the decision on January 24, 2005, which the court denied the following day. (Doc. Nos. 23 & 24.) In response to the plaintiff's motion for

---

[1]The plaintiff contends that the defendants bear the burden of identifying the unidentified defendants.  (Doc. No. 66.)  As discussed below, the plaintiff is in error.

3

an enlargement of time to complete discovery, the court on March 16, 2005, extended the deadline for completing discovery and submitting dispositive motions to June 1, 2005.  (Doc. Nos. 34 & 35.)  In response to the moving defendants' motion for an enlargement of time, the court on May 26, 2005, again extended the deadline to July 1, 2005.  (Doc. Nos. 40 & 41.)

The plaintiff on February 4, 2005, moved for partial summary judgment and submitted a brief in support of the motion and a statement of facts. (Docs. Nos. 25, 26, & 27.)  The moving defendants on March 9, 2005, submitted a brief in opposition to the plaintiff's motion and, by leave of court, an amended brief in opposition on March 11, 2005.  (Doc. Nos. 30, 31, 32, & 33.)  On March 17, 2005, the plaintiff submitted his brief in response to the moving defendants' brief in opposition to his motion.  (Doc. No. 36.)  The magistrate judge issued a report and recommendation recommending that the plaintiff's motion be denied, which the district judge adopted in denying the motion on September 30, 2005.  (Doc. Nos. 51 & 70.)

On July 1, 2005, the moving defendants moved for summary judgment. (Doc. No. 46.)  The plaintiff submitted his brief in opposition on July 12, 2005. (Doc. No. 47.)  Subsequent to two successful motions to enlarge the time to file a brief and supporting materials, the moving defendants submitted a "statement of undisputed facts" and a brief in support of their motion on September 2, 2005.  (Doc. Nos. 48, 49, 58, 61, & 62.)  Subsequent to a successful motion to enlarge the time to respond to the moving defendants'

4

motion, the plaintiff on September 28, 2005, filed his brief in opposition to the moving defendants' motion for summary judgment, a declaration and attachments, a supplemental declaration, and a "response to the defendants' statement of undisputed facts."  (Doc. Nos. 63, 64, 65, 66, 67, 68, & 69.)

## II.    Standard of Review

Summary judgment is appropriate when the pleadings and any supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C); see Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The Supreme Court has held that FED. R. CIV. P. 56(C) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The Court further stated that "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324; Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 511 (3d Cir. 1994) (quoting Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)).  The

5

party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, but the nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in the pleadings. Celotex Corp., 477 U.S. at 323, 325; Anderson v. Liberty Lobby, Inc., 477 U.S. 248-52 (1986); Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).

To determine whether the nonmoving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the nonmovant.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 242, 247-48 (emphasis in original).  A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 250.  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson, 477 U.S. at 248.  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

6

contradicts the movant's, then the non-movant's must be taken as true.'" Pastore, 24 F.3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)).

With the above principles in mind, the court will address the allegations in the amended complaint, the moving defendants' motion for summary judgment and other materials submitted to pierce the plaintiff's allegations, and the responsive materials submitted by the plaintiff in an attempt to controvert the moving defendants' materials and to demonstrate that he is entitled to judgment as a matter of law.

## III.   Discussion

### A.   Factual Background

The plaintiff alleges that the moving defendants are liable for violating his constitutional rights because the moving defendants retaliated against him for exercising his First Amendment rights, including by filing unwarranted misconduct reports and punishing him in consequence thereof, thwarting his grievances, improperly denying or dismissing his appeals of those misconducts and grievances, interfering with his mail and communications, improperly charging him various administrative fees, and transferring him to another prison and administrative custody.  Additionally, the plaintiff contends that defendant Kane violated his right to due process of law under the Fourteenth Amendment.  The plaintiff's theory of liability is premised on the

following allegations and facts, compiled from all the relevant pleadings and evidence submitted by both parties, and construed in the light most favorable to the plaintiff and, in case of conflict between those sources, upon the assumption that the plaintiff's facts are true:

As of January 2002, the plaintiff was incarcerated at SCI-Albion.  In January 2002, he was attacked by another inmate, and, in February 2002, requested through his attorney a transfer to another facility.  The request was denied.  The plaintiff subsequently filed "complaints and grievances" with the prison authorities, presumably concerning the requested transfer's denial. (Doc. No. 68.)  In November, 2002, defendant Henry, SCI-Albion's mailroom supervisor, allegedly began harassing the plaintiff, allegedly in retaliation for the plaintiff's grievances.   The plaintiff contends that defendant Henry's behavior was different before he filed any complaints or grievances than afterwards.  The basis of the plaintiff's claim is, he contends, substantiated by affiant William Hossbach, his brother, who swears that between August 2001 and July 2002 the plaintiff always received his brother's letters containing hockey cards; beginning in July 2002 the mailroom sometimes delivered the cards but other times withheld them until the plaintiff requested them; and, beginning in October 2002 the mailroom returned the letters to affiant Hossbach.  (Doc. Nos. 9, 66, 67 pl's ex. 2, & 68.)

In December 2002, defendants Wolfe, SCI-Albion's superintendent, Bryant, SCI-Albion's unit manager, Cheek, SCI-Albion's counselor, and

8

Williamson, the Department of Corrections' ("DOC") Diagnostic and Classification Coordinator, transferred the plaintiff from SCI-Albion to SCI-Frackville.   (Doc. Nos. 9, 65, 66, & 68.)  The defendants contend the transfer was in response to the plaintiff's request and was "promotional," i.e. moving the plaintiff closer to his home district because of such factors as time served and good behavior.  (Doc. Nos. 62 def's exs. B,  C, & D, 67 pl's ex. 3B.)   In contrast, the plaintiff contends that the transfer was in retaliation for his grievances and he was not allowed any input.  He further contends that an unidentified correctional officer at SCI-Frackville confirmed this to him in his welcoming interview.  (Doc. Nos. 9, 65, 66, 67 pl's ex. 3A, & 68.)  The plaintiff contends his allegation is substantiated by the DOC's transfer history, which labels the purpose of the transfer as "administrative"; however, the form clearly states that the transfer was "approved as a promotional transfer." (Doc. No. 67 pl's ex. 3C.)  The defendant filed grievance 48216 concerning his transfer.  The grievance and initial response are included in the evidence submitted to the court.  (Doc. No. 67 pl's ex. 3A.)

On January 16, 2003, defendant Kane, DOC's hearing examiner, found the plaintiff guilty of misconduct A484290, which charged the plaintiff with failing to report to work.  The plaintiff argued he was relieved from work on medical grounds, while defendant Kane's investigation showed that the plaintiff was cleared to work.  (Doc. No. 67 pl's ex. 4C.)  The plaintiff contends defendant Kane violated his due process rights by refusing to let the plaintiff

call any witnesses, as he had requested, ignoring the defense submitted by the plaintiff, and punishing the plaintiff by forfeiting one month's pay in addition to one-half of all future months' pay.  (Doc. Nos. 9, 66, & 67 pl's exs. 4A & 4B.)  In fact, the hearing report only states that the plaintiff was sanctioned with the loss of his job.  (Doc. No. 67 pl's ex. 4C.)

On or about January 22, 2003, unidentified defendant John Doe 1, SCI-Frackville staff member, allegedly diverted or destroyed the plaintiff's appeal of the misconduct.  (Doc. No. 9.)  Affiant Charles Campbell, another inmate, swears that the plaintiff placed his "timely completed, dated, and signed" appeal in the internal communications mailbox.  (Doc. No. 67 pl's ex. 5.)

On February 3, 2003, unidentified defendants John Does 2 and 3, SCI-Frackville correctional officers, allegedly harassed the plaintiff in retaliation for his grievances, although the nature of the harassment is not specified.  (Doc. No. 9.)  It may relate to a grievance, whose number is illegible, filed by the plaintiff on February 4, 2003, in which the plaintiff complained he was being harassed by inmates and staff for trying to maintain a smoke-free cell.  No response to the grievance is indicated.  (Doc. No. 67 pl's ex. 6.)

Beginning in April 2003, defendant Pogirski, SCI-Frackville's mailroom supervisor, allegedly harassed the plaintiff.  The plaintiff contends that defendant Pogirski denied the plaintiff's outside purchase request, withheld the plaintiff's mail, and diverted or destroyed the plaintiff's grievances.  These actions were the subjects of grievances 51569, 52115, and 87130, as well as

10

other unspecified grievances.  Grievances 51569 and 52115 are included in the evidence submitted to the court.  (Doc. Nos. 9, 66, & 67 pl's exs. 7A & 7B.)  In his intermediate appeal of grievance 87310, which was submitted to the court, the plaintiff refers to the diversion or destruction of three grievances submitted on May 27, 2004, and one grievance submitted on June 3, 2004, which the plaintiff complained was because defendant Pogirski, the subject of one or more of the grievances and a defendant in this action, intercepted them before delivery to thwart the plaintiff's ability to exhaust administrative remedies with respect to this action.  The plaintiff further stated that defendant Pogirski's alleged actions relieved him of the obligation to exhaust administrative remedies.  He demanded that defendant Pogirski pay punitive damages of $10,000 for each of the four diverted grievances and be discharged.  (Doc. No 67 pl's ex. 7C.)

In May 2003, defendant James, whom the plaintiff describes as the DOC grievance officer but whom the defendants identify as special assistant to defendant Beard, secretary of the DOC, allegedly denied the plaintiff's final appeal of grievance 39214.  Only the initial response to the grievance was submitted to the court.  (Doc. No. 9.)

In June 2003, defendant Scheuren, SCI-Frackville's unit manager, allegedly began harassing the plaintiff.  The plaintiff contends that defendant Scheuren refused to respond to the plaintiff's written requests, which was the subject of grievance 62342, only the grievance and intermediate appeal of

11

which were submitted to the court, denied the plaintiff's request to change housing, which forced the plaintiff to "live in a hostile environment," and "deliberately betrayed plaintiff's confidence." (Doc. Nos. 9, 66, & 67 pl's ex. 9A.)   The plaintiff apparently sought to change housing units because of alleged harassment from other inmates.  According to defendant Shannon, the plaintiff complained that "he was at risk of physical harm and harassment because information concerning the nature of his offense was disclosed to other prisoners." (Doc. No. 62 def's ex. E.)  The plaintiff also submitted a request to defendant Shannon concerning defendant Scheuren's deliberately punitive "fail[ure] to move me from a location where he knows I am being constantly harassed." (Doc. No. 67 pl's ex. 9B.)  Defendant Shannon told the plaintiff that he must go through the proper chain of command. (Doc. No. 67 pl's ex. 9B.)  An undated request submitted by the plaintiff also complains of staff ignoring his requests, as well as other harassment. (Doc. No. 67 pl's ex. 11B.)

On July 24, 2003, defendants Shannon, SCI-Frackville's superintendent, Miller, SCI-Frackville major, and Scheuren placed the plaintiff in administrative custody. (Doc. Nos. 9, 62 def's ex. E, & 66.)  The defendants claim this was undertaking to protect the plaintiff while his claims of harassment were investigated; the notification of confinement given to the plaintiff states, "This is not a disciplinary action." (Doc. Nos. 62 def's ex. E & 67 pl's ex. 10.)  The plaintiff contends that, although the defendants knew on June 24, 2003 of his

12

harassment, they did not move him to administrative custody until a month later.  (Doc. Nos. 9 & 66.)  Subsequent to an investigation into the plaintiff's claims of harassment from other inmates, the plaintiff was moved to another housing unit.  (Doc. No. 62 def's ex. E.)

In August 2003, defendants O'Day, SCI-Frackville sergeant, Mizenko, SCI-Frackville captain, and Shannon required the plaintiff to pay to replace his identification card, which defendant O'Day allegedly had broken.  In addition, they denied the plaintiff's grievance 60742, which complained about this issue, and alleged appeal.  Only the grievance was submitted to the court. (Doc. Nos. 9 & 67 pl's ex. 11A.)

Also in August 2003, defendants Walasavage, SCI-Frackville's accountant, Popek, SCI-Frackville's budget analyst, and Shannon required the plaintiff to pay a $1.00 administrative fee for a cable television account, which the plaintiff contends did not exist.  (Doc. Nos. 9 & 66.)  There is evidence the plaintiff in fact had a cable account.  In July 2003, the plaintiff had submitted a request to defendant Walasavage requesting a refund because he was billed for two cable accounts.  Defendant Walasavage refunded the plaintiff the amount of the overcharge.  (Doc. No. 67 pl's ex. 12B.)  Defendants Walasavage, Popek, and Shannon also denied the plaintiff's grievance 61058, concerning this charge, and alleged appeal.  (Doc. Nos. 9 & 66.)  The plaintiff further contends that defendants Walasavage, Popek, and Shannon denied the grievance because it was not "courteous."

13

(Doc. Nos. 9, 66, & 67 pl's ex. 12B.)  According to the initial response, the only form concerning this grievance submitted to the court, the plaintiff's cable account was cancelled by the cable provider when the plaintiff was moved into administrative custody and the cable provider, not the defendants, retained a $1.00 administrative fee, which was "not refunded for any reason."  (Doc. No. 67 pl's ex. 12A.)

In September 2003, defendants Forr, Shannon, and Burks, DOC's chief grievance officer, denied or dismissed the plaintiff's grievance 62342 and alleged appeals.  In the grievance, the plaintiff's contended that defendant Scheuren failed or refused to respond to his numerous request slips and that defendant Scheuren lied to defendant Miller concerning this failure or refusal. Only the grievance has been documented to the court.  (Doc. Nos. 9 & 67 pl's ex. 9A.)

In October 2003, defendants Forr, Popson, SCI-Frackville lieutenant, and Shannon rejected or denied the plaintiff's grievance 62342, which the plaintiff contends was improperly numbered, and allegedly ignored the plaintiff's appeal.  (Doc. No. 9.)  The plaintiff, in his appeal, complained of the misnumbering and claimed defendant Forr had ignored three communications concerning the error.  Only the intermediate appeal has been submitted to the court.  (Doc. No. 67 pl's ex. 14.)

In November 2003, unidentified defendant John Doe 4, SCI-Frackville staff member, allegedly diverted or destroyed the plaintiff's internal

14

communication with SCI-Frackville staff.  (Doc. Nos. 9 & 66.)  On November 24, 2003, the plaintiff wrote to defendant Miller complaining of the lack of security for internal communications.  (Doc. No. 67 pl's ex. 15.)

Also in November 2003, defendant Forr allegedly denied the plaintiff's grievance 68439 and allegedly refused to provide the plaintiff with a copy of the grievance and "its associated Attachment C rejection form."   No documentation of this grievance has been submitted to the court.  (Doc. No. 9.)   Later, in December 2003, unidentified defendant John Doe 5, SCI-Frackville staff member, allegedly diverted or destroyed defendant Forr's response to the plaintiff's grievance 68439.  (Doc. Nos. 9 & 66.)

Moreover, in November 2003, defendants Burks and Kyler, DOC's grievance review officer, began "repeatedly" denying or dismissing the plaintiff's final grievance appeals.  (Doc. Nos. 9 & 66.)  The plaintiff, in a letter to defendant Burks dated May 19, 2004, declared, "Let it be known that all of the appeals I submitted to your office have either been improperly dismissed, or your office has improperly upheld the institutions's improper response." (Doc. No. 67 pl's ex. 17 (emphasis in original).)   He accused the prison administration of "knowingly, concertedly, improperly, illegally, and maliciously violat[ing]" his First Amendment rights by ignoring the "overwhelming evidence and indisputable facts supporting his claims" by retaliating against him for his exercise of his free speech rights.  (Doc. No. 67 pl's ex. 17.)

In December 2003, defendants Forr and Shannon denied the plaintiff's

15

grievances 69285, 71055, and 71694 and appeals.  (Doc. Nos. 9 & 66.) Grievance 69285, which the plaintiff has documented to final appeal, concerned the prison staff's failure to acknowledge or process grievance 68439, which the plaintiff claimed was deliberate, and was allegedly denied because the issue had previously been addressed by the response to grievance 68439.  (Doc. Nos. 66 & 67 pl's exs. 18 & 19.)  Grievance 71055, only the intermediate appeal of which has been documented to the court and which apparently also concerned grievance 68439, was allegedly denied because the grievance form was incomplete and the plaintiff was not affected. (Doc. Nos. 66 & 67 pl's ex. 20.)  Grievance 71694, only the intermediate appeal of which has been documented to the court, was allegedly denied because it was not timely filed, although the plaintiff claims the violation on which the grievance was based was ongoing, so that his grievance was submitted within the fifteen-day period authorized by DOC policy.  (Doc. Nos. 66 & 67 pl's ex. 21.)

In January 2004, unidentified defendant John Doe 6, SCI-Frackville staff member, allegedly diverted or destroyed the plaintiff's internal communication with SCI-Frackville staff.  (Doc. No. 9.)  Also in January 2004, defendants Forr and Shannon denied the plaintiff's grievances 72776 and 74112 and appeals. (Doc. Nos. 9 & 66.)  Grievance 72776, which concerned the plaintiff's alleged exclusion from the holiday trivia contest in spite of his alleged timely request to participate and alleged difficulties with the internal mail system, was

apparently denied because "the issue had been previously addressed and it was late." This grievance has been documented to final appeal. (Doc. Nos. 66 & 67 pl's exs. 22 & 23.) Grievance 74112 apparently concerned defendant Shannon's failure to respond to grievance 71694 and was allegedly denied because "the issue had been previously addressed." The plaintiff conceded in his appeal form for grievance 74122 that grievance 74112 was mooted by defendant Shannon's response to grievance 71694. Grievance 74112 has been documented to intermediate appeal. (Doc. Nos. 66 & 67 pl's exs. 24 & 28.)

In February 2004, defendants Forr and Shannon denied the plaintiff's grievances 71694, 74122, both of which the plaintiff contends were improperly numbered, and 76570 and alleged appeals. (Doc. No. 9.) Grievance 76570, which is documented to final appeal, was denied because it concerned defendant Forr's alleged retaliation against the plaintiff, an issue that DOC policy did not allow to be addressed by a grievance. (Doc. Nos. 66 & 67 pl's ex. 29.) Grievances 71694, which is documented to intermediate appeal, and 74122, which is documented to final appeal and concerned defendant Shannon's failure to respond to grievance 74112, were apparently denied because "the issue had been previously addressed." (Doc. Nos. 66 & 67 pl's exs. 25 & 28.)

On February 13, 2004, defendants Forr, Durant, SCI-Frackville security captain, O'Day, Kintzel, SCI-Frackville correctional officer, and Kiefabor, SCI-

17

Frackville correctional officer, allegedly harassed the plaintiff by filing misconduct A479631 against the plaintiff.  Defendant Durant wrote the misconduct, but the plaintiff contends that it was at defendant Forr's direction and based on false charges.  (Doc. Nos. 9 & 66.)  The plaintiff contends that defendants Forr's, Durant's, and Kiefabor's involvement is shown by the misconduct form itself, which lists them as being "involved."  (Doc. No. 66.) The plaintiff contends that grievance 78896, only the grievance of which has been submitted to the court, documents defendant Kintzel's involvement and a DC-135A, "inmate's request to staff member," documents defendant O'Day's involvement.[2]  (Doc. No. 66.)  In fact, the grievance, described below, does not indicate the misconduct and concerns other conduct, but the plaintiff contends that "this claim be liberally construed" so as to link the grievance and the misconduct.  (Doc. Nos. 66 & 67 pl's ex. 26.)

In actuality, the misconduct form shows that defendant Durant filled it out and defendants Forr, Kiefabor, and two other correctional officers were involved.  The misconduct was issued subsequent to a search of the plaintiff's cell undertaken by defendant Durant at defendant Forr's request.  According

---

[2]Throughout his declaration (Doc. No. 66), the plaintiff states that his allegations are proven by his requests, letters, or grievances, or the defendants' responses thereto.  The plaintiff fallaciously begs the question by arguing circularly.  In fact, that the plaintiff mentions a defendant in connection with some complaint does not prove that the defendant is guilty of the conduct, but merely shows that the plaintiff previously raised these allegations.

to the report, the plaintiff had written to Governor Rendell[3] claiming that he had not received responses to grievances 69285 and 71694 and to Governor Rendell and defendant Burks claiming that he had not received a response to grievance 62342.   The plaintiff had further claimed that prison staff had not responded to his request to prison staff.  Responses to all the grievances and the request were found in the plaintiff's cell, so the plaintiff was charged with unsworn falsification to authorities and lying to an employee.  (Doc. Nos. 62 def's exs. F & G & 67 pl's ex. 1.)

On February 24, 2004, defendant Kane found the plaintiff guilty of lying to defendant Searfoss, SCI-Frackville's corrections classification and program manager, and sentenced him to a thirty-day cell restriction.  (Doc. No. 62 def's ex. G.)   The plaintiff contends that defendant Kane found him "guilty of conduct not specified in misconduct A479631," in violation of DOC policy and procedure.   (Doc. Nos. 9, 66, 67 pl's ex. 30, & 68.)   In March 2004, defendants Kerestes, SCI-Frackville's deputy superintendent for centralized services, Shutt, SCI-Frackville's deputy superintendent, and Searfoss "acting in concert as the Program Review Committee," denied the plaintiff's appeal of the misconduct.  (Doc. Nos. 9, 62 def's ex. H, 66, & 67 pl's ex. 31.)   The plaintiff contends that the Program Review Committee "violated DOC policies and procedures" and denied the appeal to "discredit" the plaintiff.  (Doc. Nos.

---

[3]Many of the plaintiff's grievances and requests indicate that he sent copies to Governor Rendell, Senator Specter, or other Pennsylvanian politicians.

66 & 68.)  Defendant Shannon also denied the plaintiff's appeal of misconduct A47963, which the plaintiff contends was in violation of DOC policy and procedure.  (Doc. Nos. 62 def's ex. I, 66, & 68.)

Defendant Bitner, DOC's chief hearing examiner, in April 2004 also dismissed the plaintiff's final appeal of the misconduct because it was four single-spaced pages, which defendant Bitner stated "clearly fail[ed]" to meet the brevity requirement under DOC policy and the plaintiff never resubmitted a proper appeal.  (Doc. Nos. 9, 62 def's ex. J, 66, & 67 pl's ex. 34.)  The plaintiff contends that a letter sent by him to defendant Bitner on April 6, 2004, shows that defendant Bitner "violated DOC policies and procedure."  (Doc. Nos. 9, 66, & 67 pl's ex. 34.)  The plaintiff's letter contains his argument as to why defendant Bitner erred in rejecting his appeal.  (Doc. No. 67 pl's ex. 34.)

Defendant Beard affirmed the lower reviews of the misconduct.  The plaintiff contends that defendant Beard failed or refused to act "to prevent Mr. Bitner from violating plaintiff's rights by improperly dismissing plaintiff's appeal of misconduct A479631" even though the plaintiff made him aware by the April 6, 2004, letter that defendants "Kerestes, Shutt, Searfoss, Shannon, and Bitner had violated DOC policies and procedures in handling plaintiff's appeal."  (Doc. Nos. 9, 66, & 67 pl's ex. 34.)  The plaintiff told defendant Beard that "[y]our administrators and staff are allowing their misguided emotions to supplant rational thinking in their ever-escalating attempts to violate my rights, harass me, intimidate me, and silence me."  (Doc. No. 67

20

pl's ex. 35.)

In February 2004, the plaintiff filed grievance 76364, which is documented to final appeal, in response to the misconduct, concerning the plaintiff's alleged harassment because of the exercise of his First Amendment rights.  Defendants Forr and Shannon apparently denied it and its appeals because it was frivolous and lacked supporting facts.    Apparently, it was frivolous because it concerned the misconduct, which is not an authorized subject of a grievance under DOC policy.  The plaintiff contends that the grievance did not concern the misconduct. (Doc. Nos. 9, 66, & 67 pl's ex. 27.)

In March 2004, defendants Damiter, SCI-Frackville's grievance coordinator, and Shannon denied the plaintiff's grievances and appeals. (Doc. No. 9.)  This allegation appears to refer to grievance 78896, which concerned the plaintiff's attempts subsequent to three alleged written requests to defendant Durant to retrieve property seized from his cell by defendant Kintzel. (Doc. No. 67 pl's ex. 26.)  The plaintiff contends that a letter send by him to defendant Damiter on March 29, 2004, shows that defendant Damiter "violated DOC policies and procedures."   Only the grievance has been submitted to the court. (Doc. Nos. 66 & 67 pl's ex. 33.)

In April 2004, defendant Davison, SCI-Frackville's employment manager, allegedly began harassing the plaintiff, although the nature of the harassment is not specified.  On April 19, 2004, defendants Harner, SCI-Frackville sergeant, Popson, Miller, and Shannon allegedly threatened and

21

abused the plaintiff, failed to properly investigate the plaintiff's "claim," and denied the plaintiff's grievance 82024 and intermediate appeal, both of which have been documented to the court.  (Doc. Nos. 9 & 66.)  Affiant Campbell swears that defendant Harner threatened and abused the plaintiff.  (Doc. No. 66 & 67 pl's ex. 37.)  The alleged abuse stemmed from defendant Harner's refusal to allow the plaintiff to take a chess board into a STEP Program meeting.  (Doc. No. 62 def's exs. A & L.)  Defendants Popson, Miller, and Shannon allegedly "failed to acknowledge this and to investigate plaintiff's claim."  (Doc. No. 66.)

On May 1, 2004, the plaintiff filed grievance 82945, the grievance of which has been documented to the court, claiming that defendant Davison's withholding of the plaintiff's idle pay violated the plaintiff's due process rights under the Fourteenth Amendment.[4]  (Doc. No. 67 pl's ex. 36.)  On May 20, 2004, the plaintiff filed grievance 84929, the grievance of which has been documented to the court, alleging that defendant Shannon violated DOC policy and procedure and the plaintiff's civil rights by failing to properly investigate the harassment against him.  (Doc. No. 67 pl's ex. 32.)  On May 26, 2004, in response to the plaintiff's "many meritless grievances," defendants Damiter and Shannon placed the plaintiff on grievance restriction.

---

[4]The plaintiff complained in the grievance that defendant Davison's alleged conduct violated his rights under the Fourteenth Amendment, but in the complaint in this action he raises it solely under the allegation of First Amendment retaliation.  (Doc. Nos. 9 & 36.)

22

(Doc. Nos. 9, 62 def's ex. A, 66, & 67 pl's ex. 38.)   Defendant Beard later overturned this decision because it was not in compliance with DOC policy. (Doc. Nos. 62 def's ex. A, 66, & 67 pl's ex. 38.)

The plaintiff argues that each of the above incidents was undertaken in retaliation for his exercising of his right to free speech under the First Amendment.  He further alleges that the incident of February 24, 2004, in which defendant Kane found the plaintiff guilty of misconduct A484290, violated his right to due process under the Fourteenth Amendment.   In consequence of the defendants' actions, the plaintiff seeks an injunction preventing any defendant from harassing him; unspecified damages from defendant Forr; an order transferring the plaintiff to another prison "beyond the influence of Defendant Forr"; declaratory judgment that all the above-described incidents violated the plaintiff's rights and that the DOC's grievance system, "as currently designed and administered, violates plaintiff's rights by chilling plaintiff's First Amendment rights and by intending to deter a person of ordinary firmness from further exercise of Constitutionally protected conduct"; an order appointing "an unbiased, independent, third-party consultant" to evaluate the plaintiff's grievances and misconducts and determine whether the plaintiff is entitled to reparations, restoring the plaintiff's custody level to 2, and removing all references to the plaintiff's misconducts from his records; compensatory damages that would restore the plaintiff's pay rate to $.35 per hour and restitute the difference between that rate and any

23

lesser rates at which the plaintiff was paid during the events underlying this action; punitive damages in the amount of $100 from defendants Walasavage and Popek, $500 from defendants Pogirski, Davison, and Henry, $1,000 from defendants Scheuren, Mizenko, Popson, O'Day, Harner, Kintzel, and Kiefabor, $10,000 from defendants Kerestes, Shutt, Searfoss, Williamson, Wolfe, Bryant, and Cheek, $25,000 from defendants James, Burks, Kyler, and Damiter, $50,000 from defendants Forr, Miller, and Durant, $100,000 from defendants Beard, Bitner, and Kane, and $500,000 from defendant Shannon; costs; and, "any other relief to which it may seem plaintiff is entitled." (Doc. No. 9.)

In their motion for summary judgment, the moving defendants raise six grounds for summary judgment. First, defendant Beard was not personally involved in the events underlying the plaintiff's claim. Second, with respect to defendants Forr, Popson, Shannon, Burks, and Damiter–the defendants involved in the plaintiff's grievance processes–there is no constitutional right to a grievance process. Third, with respect to defendant Kane, the plaintiff's right to due process under the law was not violated because the punishment did not impose an "atypical and significant hardship." Fourth, with respect to defendants James, Burks, Kyler, Popson, Miller, and Shannon, the plaintiff failed to exhaust administrative remedies against them. Fifth, with respect to defendants O'Day, Mizenko, Shannon, Walasavage, and Popek, the plaintiff's right to due process under the law was not violated because the plaintiff had

24

an adequate state post-deprivation remedy.   Sixth, with respect to all the defendants, the plaintiff was not engaging in protected activity.   The court shall consider these arguments, although not in the order presented by the moving defendants or as separate issues.

The plaintiff contends that the court may only consider summary judgment vis-à-vis the claims against the moving defendants.  (Doc. No. 65.) He is mistaken.   The court, under its inherent powers and in the interest of justice, may consider sua sponte whether to grant summary judgment vis-à-vis all claims and all defendants, including those defendants who were not served and did not move for summary judgment.  Because the claims against all thirty-six defendants are so intertwined, it would be duplicative and improvident for the court not to evaluate the entire case before it.  Indeed, the moving defendants have raised defenses on behalf of all the plaintiff's claims and all the defendants and, by his own admission, the "[p]laintiff has presented opposing evidence for all claims." (Doc. No. 65.)  Thus, there is no concern that any party had insufficient notice or inadequate opportunity to prepare; nor is there any concern that the record before the court, provided by the parties and subsequent to discovery, is incomplete.[5]

---

[5]The plaintiff argues that the defendants failed to disclose "the overwhelming majority" of requested discovery. (Doc. Nos. 60 & 65.)  In fact, the plaintiff moved on June 3, 2005, for an order compelling disclosure or discovery (Doc. No. 42), but he never submitted a brief in support, and the court deemed the motion withdrawn.  Thus, if there were any issue with discovery, then the plaintiff failed to pursue its resolution, and it is now uncontroverted and moot.  The court may assume that discovery proceeded

25

Because the plaintiff is proceeding pro se, the court is required to liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, this does not require a court to credit a plaintiff's "bald assertions" or "legal conclusions."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Thus, in contrast to the plaintiff's contention (see Doc. No. 66), the mere allegations that the defendants' conduct was in retaliation for the plaintiff's exercise of his First Amendment rights is insufficient to establish that there is a genuine issue of material fact.  Rather, the allegations must be supported by evidence, which the court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

## B.    Exhaustion of Remedies

Before the court can evaluate the substance of the evidence before it, it must determine a procedural predicate, whether the plaintiff exhausted administrative remedies prior to filing suit.  The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a) (2005), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The requirement of exhaustion of remedies is mandatory irrespective of whatever relief the

properly.

26

administrative procedures offer.  Booth v. Churner, 532 U.S. 731, 741 (2001).

The defendant must plead and prove the plaintiff's failure to exhaust

administrative remedies as an affirmative defense.  Ray v. Kertes, 285 F.3d

287, 295 (3d Cir. 2002).

In raising as a defense the plaintiff's alleged failure to exhaust

administrative remedies, the moving defendants contend that the plaintiff must

"demonstrate that he exhausted his remedies against them."  (Doc. No. 62.)

They are wrong.  The Third Circuit expressly held that it is the defendants'

responsibility to prove the defense.  Id.  The court reasoned its holding was

a matter of fairness because

> it is considerably easier for a prison administrator to show a failure
> to exhaust than it is for a prisoner to demonstrate exhaustion.
> '[P]rison officials are likely to have greater legal expertise and, as
> important, superior access to prison administrative records in
> comparison to prisoners.'  Prison officials and their attorneys can
> also readily provide the court with clear, typed explanations,
> including photocopies of relevant administrative regulations.  Pro
> se prisoners will often lack even such rudimentary resources.

Id. at 295 (internal citation omitted).

Consequently, the defendants bore the burden of proving by affidavit or

other documentary evidence that the plaintiff failed to exhaust remedies.

Instead, the defendants incorrectly argued that the plaintiff bore the burden

and submitted an affidavit from defendant Burks, which states, "Without the

grievance numbers and date on which they were filed, it is not possible to

determine which appeals [the plaintiff] is challenging."  (Doc. No. 62 def's ex.

27

K.)  The court finds the defendants' contentions remarkable.  The court was able to determine from the record that the plaintiff specifically identified twenty-two grievances and alluded to others.  The court further determined from the record that seven grievances were taken to final appeal, but was unable to determine whether the other fifteen grievances were appealed.  It seems, to the court, that the DOC, from the record in this case and its own institutional records, ought have been able to identify any grievances relevant to this case and investigate whether the plaintiff failed to take those grievances to final appeal.  Because the defendants have failed to meet their burden, the court must dismiss their defense with respect to the grievances. Cf. Lee v. Sewell, 159 Fed.Appx. 419, 422 n.4 (3d Cir. 2005) (unpublished) ("It is not clear whether [the prisoner-plaintiff] exhausted available administrative remedies.  We note that the motion to dismiss filed by [the defendants] argued that the amended complaint should be dismissed because Lee had not pleaded exhaustion in his complaint.  The motion did not assert, however, that [the plaintiff] had not actually exhausted administrative remedies.  As the defendants had the burden of proving non-exhaustion, they have arguably waived the defense."); Hill v. Smith, No. Civ. 05-1724, 2005 WL 2666597, at *2 (M.D. Pa. Oct. 19. 2005) ("Despite the litany of grievances [the plaintiff] presented to this court, the record reveals that he has attempted to file only one administrative remedy form.").

In contrast, the moving defendants have met their burden in raising the

plaintiff's failure to exhaust his remedies with respect to misconduct A479631. The moving defendants contend, and the record shows, that the plaintiff failed to take misconduct A479631 to final appeal because he abandoned it.  The record also contains the plaintiff's admission that he abandoned the appeal. Thus, the court should dismiss the plaintiff's complaint against defendants Durant, Kintzel, and Kiefabor because of the plaintiff's failure to take to final appeal the misconduct related to the substantive allegations against those three defendants.

### C.    Stating a Claim under § 1983

To state a claim under §1983, the plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.   42 U.S.C. §1983; <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980); <u>Morse</u>, 132 F.3d 902 (3d Cir. 1997).  That the defendants are state actors is obvious, and the issue pending before the court is whether there was a deprivation of the plaintiff's constitutional rights.  But first, the court must consider another predicative issue: whether the defendants are properly subject to the plaintiff's claims based on their personal involvement in the events underlying the plaintiff's complaint.  Then, the court will examine merits of the plaintiff's First Amendment retaliation claims.  Finally, the court will consider the merits of the plaintiff's claim of denial of due process by defendant Kane.

29

### 1.    Lack of Personal Involvement

Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Moreover, relief cannot be granted against a defendant pursuant to § 1983 based solely on the theory of respondeat superior or the fact that the defendant was the supervisor or superior of the person whose conduct actually deprived the plaintiff of one of his federally protected rights under color of state law. Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976); Goode v. Rizzo,506 F.2d 542, 550 (3d Cir. 1974), rev'd on other grounds, Rizzo v. Goode, 423 U.S. 362 (1976).

The plaintiff's complaint should be dismissed with respect to defendants Beard, James, Burks, Kyler, Bitner, Henry, and the unidentified defendants because of their lack of personal involvement.  For each of these defendants, the plaintiff has presented no evidence beyond his merest allegations, which are cursory and conclusory, that they were involved in the events underlying his claim.  There is no evidence suggesting that any of these defendants did anything except what was required by and appropriate for their jobs in responding to his complaints and grievances, to the results of which the

plaintiff took exception.[6]

The plaintiff does not allege that defendants Beard personally directed the retaliatory actions against him.  Rather, he alleges that defendant Beard knew of and acquiesced in the retaliation because he took no action to stop the retaliation subsequent to the plaintiff's informing defendant Beard of the conduct.  The evidence suggests that the plaintiff forwarded his complaints and grievances to defendant Beard, but there is no evidence beyond the plaintiff's conclusory allegations that defendant Beard knew of and acquiesced in the plaintiff's alleged harassment.  Even assuming that defendant Beard knew in fact of the plaintiff's allegations, it is not acquiescence on his part to allow his subordinates to do their duty with respect to investigating those allegations and to accept his subordinates' conclusions that the plaintiff's allegations lacked merit.[7]

Likewise, defendants James, Burks, Kyler, and Bitner, whom the plaintiff alleges are liable for knowing of and acquiescing in the plaintiff's alleged harassment merely because they denied the plaintiff's grievance and misconduct appeals.  It is not acquiescence for them to do their jobs; nor are

---

[6]With the exception of defendant Henry, the defendants for whom the court recommends dismissal for lack of personal involvement are administrators not located at SCI-Albion or SCI-Frackville.  Because of the nature of the plaintiff's claims, those defendants located at the prisons are sufficiently involved that the court cannot dismiss the plaintiff's complaint against them on this threshold predicate.

[7]Ironically, the one instance of direct action by defendant Beard is his reversal of the plaintiff's grievance restriction.

they liable because the plaintiff was dissatisfied with their conclusions. Moreover, there is no substantial allegation against defendants James, Burks, Kyler, and Bitner to establish that they did anything more or less than required by their duty–the plaintiff's claims are insufficiently cursory and conclusory. Mere knowledge of the plaintiff's complaints and a finding adverse to the plaintiff do not indicate acquiescence. There is no evidence, but simply bald allegations, that any of these defendants exceeded their authority or acted improperly in exercising that authority.

The plaintiff's claim of liability against defendant Henry is based solely on his statement that defendant Henry's behavior was different before the plaintiff filed any grievances than after. He tries to substantiate this claim with his brother's affidavit, which does not even mention defendant Henry. There is no evidence whatsoever linking defendant Henry to the alleged retaliation.

The plaintiff's claims against the unidentified defendants consist entirely of speculative and cursory allegations. He has adduced no evidence that any John Doe defendant actually undertook any action against him. He contends that defendant John Doe 1 diverted or destroyed a misconduct appeal, which he further contends is evidenced by another inmate's affidavit that the plaintiff timely placed a proper appeal in the mailbox. This is fallacious causation, which is insufficient to state a claim. The plaintiff's allegations against the other John Doe defendants do not even adduce fallacious interpretations of the evidence, but merely the plaintiff's bald assertion that they "violated

32

plaintiff's rights" by harassing him or destroying or diverting his mail.

The plaintiff has failed to raise any allegation that is not cursory and conclusory against defendants Beard, James, Burks, Kyler, Bitner, Henry, and the unidentified defendants.  He has adduced no evidence to establish that these defendants were personally involved in the alleged actions against him, and has thus failed to show that there is any genuine issue of material fact with respect to them.   Consequently, the plaintiff's complaint should be dismissed against defendants Beard, James, Burks, Kyler, Bitner, Henry, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6.

## 2.    First Amendment Retaliation Claims

A prisoner alleging retaliation must make three showings:  First, the plaintiff must show that the plaintiff engaged in constitutionally protected conduct.  Rauser v. Horn, 241 F.3d 333 (3d Cir. 2001) (citing Thaddeus-X v. Bladder, 175 F.3d 378, 389 (6th Cir. 1999) (en banc) (per curiam)).  With respect to this case, although a prisoner has no constitutional right to a grievance process, Thibodeau v. Watts, No. CV-05-2502, 2006 WL 89213, at *5 (M.D. Pa. Jan. 11, 2006); Pressley v. Beard, No. CV-04-2535, 2005 WL 2347369, at *4 (M.D. Pa. Sept. 26, 2005); Wilson v. Horn, 971 F.Supp. 943, 946 (E.D. Pa. 1997), aff'd 142 F.3d 430 (3d Cir. 1998); Hoover v. Watson, 886 F.Supp. 410, 418 (D. Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995); see Jones

v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) ("[W]hile I applaud such procedures, and indeed urged their adoption, I do not suggest that the procedures are constitutionally mandated.") (internal citation omitted), retaliation against a prisoner for filing grievances "implicates conduct protected by the First Amendment." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996)); see Pell v. Procunier, 417 U.S. 817, 822 (1974); Thaddeus-X, 175 F.3d at 387 (citing Graham v. Connor, 490 U.S. 386 (1989)).

Second, the plaintiff must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Rauser, 241 F.3d at 333 (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Adverse actions that are sufficient to support a retaliation claim include, as relevant to this case, harassment, filing false misconduct reports against the prisoner, improperly handling the prisoner's grievances, transferring the prisoner to another prison, and placing a prisoner in administrative custody. Mitchell, 318 F.3d at 530; Smith v. Messinger, 293 F.3d 641, 653 (3d Cir. 2002); Rauser, 241 F.3d at 333; Allah, 229 F.3d at 225-26; Wheeler v. Beard, No. Civ. 03-4826, 2005 WL 1840159, at *3 (E.D. Pa. 2005). The nature of the other adverse actions alleged by the plaintiff, the imposition of administrative fees and interference with mail and internal communications, are sufficiently analogous to adverse actions recognized by the courts that they may be considered here.

34

Finally, there must be a causal link between the exercise of the prisoner's constitutional rights and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This element uses a burden-shifting framework. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to discipline or retaliate against him. Id. (citing Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 297(1977)). Evidence of a causal connection may include a "suggestive temporal proximity" between the prisoner's protected activity and the defendant's adverse action; however, "the timing of the alleged retaliatory action [must be] 'unusually suggestive' of retaliatory motive." Id. at 334; Branch v. Russian, No. Civ. 00-1728, 2005 WL 1137879, at *7 (M.D. Pa. 2005) (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). Other evidence of a causal connection may include the defendant's statements as to motivation or a chronology of events from which the defendant's retaliatory animus can reasonably be inferred. See Rauser, 241 F.3d at 334; Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084 (1996); Wheeler, 2005 WL at *4. Once the prisoner meets this burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. Rauser, 241 F.3d at 334.

In considering the third element, the court must take into account the

35

difficult task of prison administration.  Id.  A prison regulation that impinges on an inmate's constitutional rights is nonetheless valid if it is "reasonably related to legitimate penological interests."  Id. (citing Turner v. Safely, 482 U.S. 78, 89 (1987)).  Therefore, even if a prisoner can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, so long as the prison officials can prove that absent the protected conduct they would have made the same decision for reasons reasonably related to a legitimate penological interest, they will prevail on a claim of retaliation.  Id.

In addition, in establishing the elements of a First Amendment claim of retaliation, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.  Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted).  While mindful that the pro se plaintiff may not be held to a heightened burden of proof, the court should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated."  See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods, 60 F.3d at 1166; Colon, 58 F.3d at 873; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983); Hyson

36

v. Corr. Med. Serv., Inc., No. Civ. 02-318, 2003 WL 292085, at *2 n.1 (D.Del. 2003); Sims v. Dragovich, No. Civ. 95-6753, 1999 WL 371621, at *3 (E.D. Pa. 1999).

In this case, the plaintiff has shown the first two elements.  He has alleged that the defendants retaliated against him because he filed grievances, which implicates his rights under the First Amendment.  Further, the alleged retaliation–harassment, the false misconduct, the denial and improper handling of the plaintiff's  grievances, the inter- and intra-prison transfers, the imposition of administrative fees, and interference with mail and communications–constitute adverse action that would be "sufficient to deter a person of ordinary firmness" from further filing grievances.[8]  However, the plaintiff has failed to show the third element.  Because there is no causal link between the plaintiff's exercise of his constitutional rights and the adverse actions, the moving defendants' motion for summary judgment should be granted with respect to all moving defendants on the retaliation claim.  In addition, the plaintiff's claim should be dismissed against the unserved and unidentified defendants because, on the same facts and evidence, the plaintiff has likewise failed to implicate the unserved and unidentified defendants' liability under the third element.

The plaintiff's allegations fail to establish a causal link because they are

---

[8]It is well that the standard is objective and not subjective because, clearly, the defendants' adverse actions did not deter the plaintiff.

bald and conclusory.  He states his belief, unsubstantiated by any of the evidence, that the defendants retaliated against him for his grievances. Indeed, the evidence suggests, and the defendants aver, that the adverse actions taken against the plaintiff, if they occurred at all, were nonretaliatory and were undertaken either at the plaintiff's request or because the plaintiff's complaints lacked merit.  The plaintiff claims he was harassed and threatened and abused, but he makes no more than mere assertions that this was so, and the evidence does not show that any harassment that might have occurred was retaliatory.  Likewise, there is no evidence suggesting that the interfered with the plaintiff's mail or internal communications.  The allegations are specious and unsubstantiated.   The plaintiff claims that misconduct A484290 was falsely filed against him, but the evidence suggests that he was charged with the misconduct because he violated DOC policy and not in retaliation for his grievances.  The evidence does not indicate that the plaintiff was charged falsely with misconduct A479631 in retaliation, but rather because the defendants believed that the plaintiff had lied to another employee and to various politicians.  The plaintiff claims his grievances and requests were denied improperly or papers relating to them diverted or destroyed.  There is no basis for the claim except the plaintiff's assertions. The evidence suggests that the prison staff responded to the grievances according to DOC policy and denied them because they found them to lack merit.  Further, there is no evidence that anyone diverted or destroyed any

38

papers relating to any grievance or request.  There is no evidence that the defendants imposed any administrative fees upon the plaintiff in retaliation for his exercise of his First Amendment rights.  Finally, the plaintiff claims he was transferred from SCI-Albion to SCI-Frackville and held in administrative custody because of his grievances, but again there is no evidence to indicate these actions were retaliatory instead of responsive to the plaintiff's requests or concerns.  In both instances, the plaintiff complained of harassment by other inmates, and the prison administrators responded to ensure the plaintiff's safety.

Under the circumstantial factors, the evidence also establishes no basis for the plaintiff's claims.  There is a temporal proximity between the filing of the grievances and the defendants' adverse actions, but this must obviously be so because the adverse actions at issue here either were related to those grievances.  Thus, the temporal proximity is not unusually suggestive.  It is in not out of the ordinary as to indicate that the defendants retaliated against the plaintiff.   The defendants made no statements indicating a retaliatory motivation. The chronology of events, although establishing a pattern wherein the plaintiff filed a grievance or submitted a requested that was subsequently denied, cannot be read to reasonably infer the defendants' retaliatory animus. Rather, it establishes that the plaintiff submitted grievances and requests that the defendants found to be meritless, was unhappy with the responses, and complained  further  about  those  responses,  alleging  them  to  be  the

39

consequence of retaliation.

Moreover, with respect to those adverse actions that were undertaken pursuant to policy or practice–the inter- and intra-institutional transfers, the processing and review of grievances, misconducts, and appeals, and the charge of administrative fees for badges and cable–the evidence suggests that the adverse actions were reasonably related to a legitimate penological interest.  The plaintiff complained of harassment by inmates; the defendants had a rational interest in moving the plaintiff to a place of safety.  The plaintiff complains that the defendants improperly denied his grievances, misconducts, and appeals, but the evidence shows that they followed DOC procedures, which seem designed to streamline the processing of grievances  and misconducts, an eminently legitimate purpose considering the opportunity for inmates to burden prison staff with complaints.  Although the plaintiff may not like the technical, procedural ground on which many of his grievances were denied or that the reviewers did not conduct independent investigations, the procedures still survive scrutiny as being legitimate.  It is also rational for prison staff to impose fees for sundries such as badges and cable, to reimburse for their very provision as well as to discourage abuse.  Finally, the defendants have averred that they would have made the same decisions absent the plaintiff's First Amendment rights, and the plaintiff has submitted no evidence that directly or inferentially casts doubt on those averments.

In sum, the plaintiff has pointed to no evidence showing directly or

40

inferentially that the defendants retaliated against him.  He has failed to show that a retaliatory animus was a substantial or motivating factor in any of the defendants' adverse actions.   Instead, the defendants' actions were the legitimate consequences of the difficult task of prison administration.  On the basis of the record before the court, the plaintiff has failed to meet his burden, and the court will not shift the burden to the defendants.  The plaintiff has not shown that there is any genuine issue of material fact concerning his retaliation claim.  Consequently, the moving defendants' motion for summary judgment should be granted with respect to defendants Forr, Shannon, Kerestes, Shutt,  Searfoss, Kane, Damiter, Scheuren, Walasavage, Popek, Davison, Miller, Durant, Mizenko, Popson, O'Day, Harner, Kintzel, and Kiefabor on all retaliation claims and the plaintiff's complaint should be dismissed with respect to defendants Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe, Bryant, Cheek, Henry, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6 on all retaliation claims.

### 3.    Deprivation of Due Process Claim

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV, § 1.   "The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)).

41

Procedural due process means a state can deprive a person of his life, liberty, or property only so long as the deprivation is justified by a procedure appropriate to the nature of the deprivation. Carey v. Piphus, 435 U.S. 247, 259 (1978).  The Fourteenth Amendment provides three requirements to establish a procedural due process violation. Parratt v. Taylor, 451 U.S. 527, 536 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).  First, the defendant must have acted under color of law at the time the alleged deprivation occurred. Id.  Second, the plaintiff must show the existence of a protected interest in life, liberty, or property that has been interfered with by the state-defendant. Bd. of Regents v. Roth, 408 U.S. 564, 571 (1972); Goldberg v. Kelly, 397 U.S. 254 (1970).  Third, the plaintiff must then show that the procedures attendant upon that deprivation were constitutionally insufficient. Hewitt v. Helms, 459 U.S. 460 (1983), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

In the context of prison administration, cognizable liberty interests are "generally limited" to deprivations that "impose[] atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997).  "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125 (1977))

(internal quotation and citation omitted).   Prison administrators need to manage and control prisoners, and the procedures used and punishments imposed by them in combating inmate misconduct fall within the legitimate framework of prison life that an inmate may expectantly encounter.  <u>Sandin</u>, 515 U.S. at 485; <u>Griffin</u>, 112 F.3d at 706.  Thus, for example, a prisoner has no cognizable claim if he is placed in administrative custody or other restricted housing or if he is not allowed to present witnesses in his defense at a disciplinary hearing.  <u>Sandin</u>, 515 U.S. at 485-86; <u>Griffin</u>, 112 F.3d at 706.

In this case, the plaintiff has failed to implicate a deprivation of due process under the Fourteenth Amendment against defendant Kane because he has no cognizable liberty interest at stake.  The first element is clear.  However, the plaintiff cannot establish the second element.  The plaintiff raises three claims against defendant Kane: First, he was not allowed to present witnesses.  Under the Third Circuit's jurisprudence, this is explicitly not a due process violation.  Second, defendant Kane ignored the plaintiff's proffered defense.  In actuality, the evidence suggests that defendant Kane did not ignore the plaintiff's defense, but rather found it less plausible than the misconduct report.  Even if defendant Kane did ignore the plaintiff's proffered defense, there would still be no due process violation.  In the ordinary course of prison life, it is expectable that a hearing officer would have to balance the credibility of prison staff against inmates and would find the inmates to be less credible.  Third, defendant Kane improperly punished the plaintiff by forfeiting

43

the plaintiff's pay.  The evidence does not indicate that the plaintiff was punished with forfeiture of pay, but even so such forfeiture is not a due process violation because it is within the expectable parameters of prison discipline.  Because the plaintiff has failed to establish the second element, the court need not consider the third element.  The plaintiff has not shown that defendant Kane deprived him of due process because the evidence does not suggest that defendant Kane imposed upon the plaintiff any atypical or significant hardship that an inmate would not ordinarily encounter.  Defendant Kane's motion for summary judgment should be granted with respect to this claim.

### D.    The Unserved and Unidentified Defendants

A court has the inherent power to dismiss with prejudice a complaint for the plaintiff's failure to prosecute the case. Link v. Wabash R.R. Co., 370 U.S. 626, 629-30 (1962); Titus v. Mercedes Benz of N. America, 695 F.2d 746, 749 (3d Cir. 1982).  This inherent power is "expressly recognized," Link, 370 U.S. at 629-30, in FED. R. CIV. P. 41(b), which provides that, "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."  Unless the court specifies otherwise, the dismissal is with prejudice. Id.  Although the language seems to negatively imply that the court may dismiss only upon the defendant's motion, in fact the rule embodies the

44

common law principle that a court may dismiss <u>sua</u> <u>sponte</u> pursuant to its inherent power. <u>Link</u>, 370 U.S. at 630-31. Additionally, the court need not provide notice or an adversarial hearing to the plaintiff prior to dismissal. <u>Id.</u> at 632-33. Due process is satisfied where the facts of the case "were such as to dispense with the necessity for advance notice and hearing." <u>Id.</u> Nonetheless, dismissal is a "drastic sanction" and "should be reserved for those cases where there is 'a clear record of delay  or contumacious conduct by the plaintiff.'" <u>Titus</u>, 695 F.2d at 749-50 (internal citations omitted).

In addition to a court's inherent power to dismiss for the plaintiff's failure to prosecute, a court may dismiss under Fed. R. Civ. P. 4 for the plaintiff's failure to serve defendants. FED. R. CIV. P. 4(c)(1) provides, "The plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m)." FED. R. CIV. P. 4(m) provides, "If service of the summons and complaint is not made upon a defendant with 120 days after the filing of the complaint, the court, . . . on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." <u>See</u> <u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1305 (3d Cir. 1995). The court must extend the time for service if the plaintiff's failure to serve the defendants was for good cause. FED. R. CIV. P. 4(m); <u>see</u> <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 196 (3d Cir. 1998); <u>Petrucelli</u>, 46 F.3d at 1305-06.

In this case, the plaintiff's complaint should be dismissed with respect

45

to the unserved and unidentified defendants because the plaintiff has failed to prosecute the case against them.  When the court granted the plaintiff's motion to amend his complaint, it ordered him to serve the newly added defendants within thirty days.  The plaintiff failed to serve all the defendants and made no subsequent efforts to comply with the court's order or even FED. R. CIV. P. 4(m).  The plaintiff is aware that not all the defendants were served, as shown in his response to the moving defendants' motion for summary judgment, and it is now more than one and one-half years since the plaintiff amended his complaint.  Furthermore, the plaintiff has undertaken no effort to identify the unidentified defendants.  Indeed, he has apparently refused to make any effort because he believes the defendants bear the burden of identifying the John Doe defendants.  The plaintiff's behavior indicates a "clear record of delay" and contumacy.  Consequently, in the interests of justice and avoiding prejudice to the unserved and unidentified defendants, as well as avoiding further burdening the court's time, the plaintiff's complaint should be dismissed with prejudice against defendants Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe, Bryant, Cheek, Henry, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6.  Cf. Veteto v. Miller, 829 F.Supp. 1486, 1497 (M.D. Pa. 1992) (dismissing the plaintiff-prisoner's complaint for failure to prosecute where, subsequent to discovery and despite the plaintiff's claims that the defendants obstructed discovery, the plaintiff failed to identify the defendants); Howmet Corp. v. Tokyo Hipping Co.,

46

318 F.Supp. 658, (D.Del. 1970) (dismissing the plaintiff's complaint for failure to prosecute where the plaintiff served the defendants three years after filing the complaint, which prejudiced the defendants' ability to defend themselves).

In the alternative, the court should dismiss the plaintiff's complaint against defendants Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe, Bryant, Cheek, Henry, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6 for the plaintiff's failure to serve those defendants pursuant to FED. R. CIV. P. 4(c)(1) and (m).  The opportunity for the plaintiff to respond to this report and recommendation will serve as adequate notice for him to show good cause for his failure to serve them.

## IV.    Conclusion

On the basis of the foregoing,    **IT IS RECOMMENDED THAT:**

1.     the moving defendants' motion for summary judgment be **GRANTED** with respect to defendants Durant, Kintzel, and Kiefabor because the plaintiff failed to exhaust administrative remedies against them;


2.     the plaintiff's complaint be **DISMISSED** against defendants Beard, James, Burks, Kyler, Bitner, Henry, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6 for lack of personal involvement under § 1983;

47

3.      the moving defendants' motion for summary judgment be
        **GRANTED** with respect to defendants Forr, Shannon, Kerestes,
        Shutt,  Searfoss, Kane, Damiter, Scheuren, Walasavage, Popek,
        Davison, Miller, Durant, Mizenko, Popson, O'Day, Harner, Kintzel,
        and Kiefabor as to the plaintiff's allegation of retaliation;

4.      the plaintiff's complaint be **DISMISSED** with respect to defendants
        Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe,
        Bryant, Cheek, Henry, John Doe 1, John Doe 2, John Doe 3, John
        Doe 4, John Doe 5, and John Doe 6 as to the plaintiff's allegation
        of retaliation;

5.      the moving defendants' motion for summary judgment be
        **GRANTED** with respect to defendant Kane as to the plaintiff's
        allegation of a deprivation of due process; and,

6.      the plaintiff's complaint be **DISMISSED** with prejudice against
        defendants Beard, James, Burks, Kyler, Williamson, Bitner,
        Pogirski, Wolfe, Bryant, Cheek, and Henry and unidentified
        defendants John Does 1, 2, 3, 4, 5, and 6 for the plaintiff's failure
        to prosecute, or, in the alternate, **DISMISSED** without prejudice

48

against those defendants for the plaintiff's failure to comply with FED. R.

CIV. P. 4(m).



S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**


Date: March 13, 2006

O:\shared\REPORTS\2004 Reports\04-0370.01.wpd