**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND ALEXANDER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO. 3:CV-04-0370** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **JIM FORR, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This matter is before the Court on *pro se* Plaintiff Raymond Alexander's objections to the

March 13, 2006 Report and Recommendation ("R&R") of Magistrate Judge Malachy E.

Mannion.  The 49-page R&R sets forth a comprehensive account of the claims presented in

Alexander's prolix pleadings against thirty (30) named Defendants and six John Doe

Defendants.  Essentially, Alexander has haled into federal court every corrections official who

either (a) had some involvement in handling Alexander's numerous formal grievances that were

not resolved to Alexander's satisfaction (and even one that ultimately was decided in his favor);

(b) had some involvement in his transfer from the State Correctional Institution at Albion to the

State Correctional Institution at Frackville ("SCI-Frackville), a transfer that brought him 250

miles closer to his home; (c) was involved in the processing of a misconduct report he received

while incarcerated at SCI-Frackville; or (d) otherwise took action that Alexander did not think

was authorized, such as refusing to allow him to take a chess board into a meeting.  The thrust

of Alexander's claims is that each Defendant's purportedly adverse action was taken to retaliate

against Alexander for his propensity to file administrative grievances.

After sorting through a somewhat convoluted record involving numerous administrative grievance proceedings initiated by Alexander, the records pertaining to Alexander's transfer to SCI-Frackville, the documentation concerning the misconduct report and related disciplinary proceedings involving a claim that Alexander lied to a corrections official, as well as numerous declarations submitted by Defendants and Plaintiff, Magistrate Judge Mannion made the following recommendations:

> First, the claim against Defendants Durant, Kintzel, and Kiefabor concerning misconduct A479631, which Alexander claims to have been fabricated in retaliation for his having submitted administrative grievances, should be dismissed on exhaustion grounds because Alexander did not pursue an appeal of the misconduct finding to the final level of administrative review.

> Second, the claims against Defendants Beard, James, Burks, Kyler, Bitner, Henry and the John Doe Defendants should be dismissed because there is no evidence of personal involvement in conduct that violated Alexander's constitutionally-protected rights.

> Third, summary judgment should be entered in favor of all Defendants because Alexander has not presented any evidence of a causal link between his pursuit of administrative grievances and the alleged adverse actions attributed to each Defendant.[1]

---

[1]Magistrate Judge Mannion recommended that summary judgment be granted in favor of those Defendants who had been served with process, and that the retaliation claims against those Defendants not shown to have been served with process (Defendants Beard, James, Burks, Kyler, Williamson, Bitner, Pogirski, Wolfe, Bryant, Cheek, Henry, and the John Doe Defendants) be dismissed because of the absence of evidence of a causal relationship

Fourth, summary judgment should be granted in favor of Defendant Kane as to Alexander's procedural due process claim concerning the handling of the misconduct charge because the misconduct finding did not implicate any interest protected by the Fourteenth Amendment.

Fifth, the unserved Defendants as well as the John Doe Defendants should be dismissed for failure to prosecute, or, alternatively, failure to effect service of process in a timely manner.

Alexander argues that the R&R should not be adopted because, in his words, it:

1.  Mischaracterizes prior actions by the "moving defendants"

2.  Misapplies the evidentiary standard.

3.  Makes and relies upon misstatements of fact, thereby making its resulting conclusion unreasonable determinations of the facts.

4.  Misapprehends plaintiff's claims, statements, and arguments.

5.  Ignores the *res judicata* of this Court's finding for plaintiff's motion for partial summary judgment.

6.  Cites, but ignores, case law relating to the alleged defect in service.

(Objections to R&R (Dkt. Entry 78) at 1-2).[2]  Alexander has also moved to supplement the

---

between Alexander's grievance-filing activities and the alleged adverse actions.  The effective result of Magistrate Judge Mannion's recommendation, however, is the same as to all Defendants.  Because it appears that the Defendants not served with process have participated in this litigation through counsel, and the analysis of the claims against them is the same as the analysis applied with respect to the other Defendants, it is appropriate to decide whether all Defendants are entitled to summary judgment.

[2] Alexander's objections do not contest the conclusion that the disciplinary proceedings brought against him did not implicate a constitutionally-protected interest, thus foreclosing any due process claim.  Instead, Alexander asserts that the disciplinary proceedings were yet other instances of retaliation.  Accordingly, it is appropriate to address only the matter of whether the

record.  (Dkt. Entry 83.)

Alexander has not shown good cause for having failed to submit the "supplemental" evidence – a letter dated February 16, 2005 – at the time he filed his brief in opposition the summary judgment motion (September 28, 2005).  Accordingly, the motion to supplement the record will be denied.  Moreover, having reviewed the record *de novo* and given plenary consideration to Alexander's arguments, I have concluded that summary judgment in favor of all Defendants on the substantive claims presented in this case is indeed warranted.  In light of this determination, there is no need to address the exhaustion of administrative remedies and service of process issues.[3]

_____

evidence of record is sufficient to warrant a trial on the retaliation claims.

[3]Defendants did not oppose Alexander's objections to that part of the R&R that concerned the issue of effective service of process.  They further indicated that they did not oppose granting Alexander additional time to serve those Defendants who had not yet been served with process.  The record, however, indicates that substantive defenses have been advanced on behalf of all Defendants, both those served and those not served.  For example, the Answer to the Amended Complaint was submitted on behalf of all Defendants.  It thus may be that counsel effectively waived any defect as to service of process by mounting substantive defenses on behalf of all Defendants.  See Fed. R. Civ. P. 12(h)(1).  There is no need to address this question, however, as it is clear that Alexander cannot present evidence sufficient to support his expansive retaliation claims against any of the named Defendants.  As to the John Doe defendants, Alexander had ample opportunity to engage in discovery to secure their identities.  Having failed to do so, Alexander cannot now complain about their dismissal.  Absent compelling reasons, a district court may dismiss Doe defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. See Guardian Life Ins. Co. of Am. v. Weisman, 30 F. Supp. 2d 720, 722 n.2 (D.N.J. 1998) ("[B]ecause discovery, which has been completed, apparently has not yielded the identities of any new defendants, the claims against the fictitious defendants . . . will . . . be dismissed."); Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery

I. **DISUSSION**

    A. **Mischaracterization of Prior Actions by the "Moving Defendants"**

Alexander complains that the R&R attributed the Answer to his Amended Complaint (Dkt. Entry 20) only to the Defendants that Magistrate Judge Mannion had identified as having been served with process.  Alexander points out that the Answer was submitted on behalf of all named Defendants, excepting, of course, the John Doe Defendants.  In light of the fact that the parties have addressed the substance of Alexander's claims as to each named Defendant, and an analysis of the record substantiates the conclusion that summary judgment in favor of all named Defendants is warranted, this objection is immaterial.

    B. **Misapplication of the "Evidentiary" Standard**

Alexander appears to be claiming that the Magistrate Judge did not properly apply the standard of review governing summary judgment motions.  Specifically, Alexander appears to be contending that there is necessarily a genuine issue of material fact as to whether actions taken by particular defendants were, in his words, "retaliatory or legitimate."  (Objections to R & R (Dkt. Entry 78) at 3.)  This statement by Alexander suggests that it is he who misapprehends the analytical framework of a retaliation claim.  Even where a prisoner shows that the exercise of a constitutional right was a motivating factor in a contested decision, a prison official may still

_____

yields no identities.").

5

prevail by proving that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological purpose. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001). Thus, even if there is a genuine dispute as to retaliatory intent, a defendant may still prevail on a summary judgment motion by showing that the same action would have been taken for a legitimate penological purpose. See Parker v. United States, No. 05-5281, 2006 WL 2547233, at *3 (3d Cir. Sept. 5, 2006) (affirming summary judgment in favor of prison officials who showed that same action would have been taken for legitimate penological purposes absent the alleged protected conduct); Sims v. Vaughn, No. 06-1163, 2006 WL 2038748, at *2 (3d Cir. July 21, 2006) (same). Stated otherwise, a dispute about retaliatory intent does not foreclose summary judgment.

Alexander argues that once a Defendant has acknowledged taking action that was adverse to Alexander, an inference of a retaliatory motive must be drawn in his favor. Plaintiff also contends that the R&R unreasonably credited the defense evidence, but did not accord appropriate treatment to declarations that he submitted in opposition to the summary judgment motion.

Contrary to Alexander's assertion, the mere fact that his grievances were rejected or denied does not suffice to warrant an inference that the rejection or denial was retaliatory. If that were the case, then there would exist a First Amendment retaliation claim any time an inmate was dissatisfied with the outcome of the grievance proceedings or a Department of

Corrections' official mistakenly handled an administrative grievance. The law requires the existence of a causal link between the exercise of a protected right and adverse action taken by a prison official "'sufficient to deter a person of ordinary firmness from exercising his rights.'" Rauser v. Horn, 241 F.3d at 333 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Rejection or denial of a grievance, even on erroneous grounds, does not perforce suggest a retaliatory motive.[4]

Alexander contends that summary judgment in favor of Defendant Henry on the claim of retaliatory mishandling of mail is inappropriate because "he was the mailroom supervisor and was responsible for the acts." (Objections to R&R, Dkt. Entry 78, at 4.)  Of course, supervisory status does not suffice to impose personal liability for an alleged violation of constitutional rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  No evidence was submitted that Henry interfered with Plaintiff's mail or had a reason to retaliate against Plaintiff.

Alexander argues that as to the transfer from SCI-Albion to SCI-Frackville, the court must credit his conclusory denial that he did not meet the criteria for what Defendants have characterized as a "promotional transfer."  Defendants have identified the criteria satisfied by

---

[4]It is doubtful that rejection or denial of a grievance constitutes the kind of adverse action that would deter a person of ordinary firmness from exercising constitutional rights.  In this regard, the grievance process contains multiple levels of review, allowing an inmate to redress mistaken rejections or denials.  Thus, the mere fact that a grievance has been rejected or denied would not seem to be that kind of conduct that would deter an inmate of ordinary firmness from pursuing the grievance process.  Certainly, Alexander has not been deterred from utilizing the grievance processes established by the Department of Corrections.

Alexander to allow for the transfer.  Alexander has simply denied the assertion, without

providing any substantiating evidence or identifying one of the criteria that he did not meet.  Nor

has he supplied any evidence to support his assertion that the named Defendants were

required to confer with him with respect to the transfer.  Significantly, it is undisputed that

Alexander requested that he be transferred from SCI-Albion.  It is also undisputed that he was

moved more than 200 miles closer to his home as a result of the transfer.  Thus, this case is

unlike Rauser, 241 F.3d at 333, which involved the transfer of an inmate to a distant prison

where his family could not visit him.  Evidently, Alexander would have preferred a prison other

than SCI-Frackville, but a prisoner does not have a right to select the place of confinement.

Under these circumstances, Alexander's bald denial that he met the criteria for a promotional

transfer does not suffice to create a genuine issue of fact on defendants' contention that there

existed a reasonable and legitimate penological objective in transferring him from SCI-Albion to

SCI-Frackville.[5]  Thus, even if there were a genuine dispute as to a retaliatory motive,

Defendants Wolfe, Bryant, Cheek, and Williamson (the corrections official Plaintiff claims

caused his transfer in retaliation for his exercise of First Amendment rights), would be entitled

to judgment in their favor because they have established that they would still have transferred

Plaintiff for reasons reasonably related to legitimate penological purposes.

---

[5] Moving an inmate closer to home is certainly reasonably related to the legitimate penological interest of encouraging good conduct on the part of inmates and enhancing an inmate's contact with family.

Alexander also complains that the R & R improperly discounted the affidavit of a fellow inmate concerning the encounter Alexander had with Defendant Harner concerning taking a chess board into a STEP program meeting.  The inmate's declaration states that Sergeant Harner acted "in a physically threatening manner," and used "vile, abusive, and threatening language . . . ."  Verbal abuse or threats do not constitute the type of adverse action sufficient to support a retaliation claim.  See Bartelli v. Bleich, No. Civ. A. 3:CV-04-0899, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005) ("mere verbal threats cannot be viewed as an 'adverse action' sufficient to deter a person of ordinary firmness from exercising his First Amendment Rights").  Accordingly, the inmate's declaration does not concern a material matter. The incident with Sergeant Harner is insufficient to support a retaliation claim.[6]

Alexander has not otherwise identified any other instance in which the Magistrate Judge misapplied the standard of review governing summary judgment motions.  Indeed, it is evident that Magistrate Judge Mannion carefully scrutinized the entire record, identified all material evidence, and made his recommendation only after concluding that the evidence, viewed in the light most favorable to Alexander, did not establish the existence of a genuine dispute of any pertinent fact.

---

[6]Alexander claims that there was no rule prohibiting him from taking the chess board into the program meeting.  This fact is also immaterial because stopping an inmate from taking a game board into a meeting at the prison is not the kind of conduct that is likely to deter an inmate from exercising constitutional rights.

### C. **Misstatements of Fact**

Alexander contends that Magistrate Judge Mannion made numerous mistakes as to the facts that affected the analysis of his claims.  For example, he argues that his defense to a misconduct report for having failed to show up for a work assignment was based upon the fact that a kitchen uniform had not been issued to him, and not because he had been relieved from work on medical grounds.  Alexander seeks to re-litigate in this proceeding the correctness of the hearing officer's rejection of his defense.  Alexander, however, offered no evidence of a causal link between the exercise of a protected right and the fact that defendant Kane found him guilty of the misconduct charge of failing to report for a work assignment.

Other instances of misstatements of fact are similarly immaterial.  As pointed out by the defense, the rejection of his complaint that he was improperly denied a refund of a one dollar administrative fee cannot support a retaliation claim as it is not the type of conduct that would deter a person of ordinary firmness from exercising constitutional rights.  Moreover, stating that a grievance had been "denied," as opposed to "rejected," does not affect the analysis as to whether there was competent evidence of a causal link between the exercise of a protected right and the decision on the grievance itself.

### D. **Misapprehension of Plaintiff's Claims, Statements and Arguments**

Alexander contends that the R&R reflects a misunderstanding of certain statements and arguments that he presented.  Once again, however, Alexander focuses on immaterial matters.

10

For example, with respect to Alexander's failure to pursue discovery concerning the identity of fictitious defendants, Alexander contended that the Magistrate Judge had incorrectly stated that Alexander had failed to file a brief in support of a discovery motion.  This Court's Order of August 9, 2005, plainly stated that the Court's record did not include a memorandum of law in support of the motion to compel discovery, and that Alexander could move again to compel discovery.  (Order of August 9, 2005, Dkt. Entry 55.)  Alexander did not do so, and Magistrate Judge Mannion did not err in this treatment of this particular matter.

Alexander also complains about statements pertaining to service of process.  Again, whether he was aware that certain Defendants had not been served is immaterial to an analysis of his multiple retaliation claims.

### E.  Effect of This Court's Denial of Alexander's Partial Summary Judgment Motion

Alexander incorrectly argues that the fact that his motion for partial summary judgment was denied by this Court's Order of September 30, 2005, necessarily warrants denial of Defendants' summary judgment motion.  In denying Plaintiff's partial summary judgment motion, this Court observed that the affidavits presented by some of the defendants were sufficient to show that they would have taken the same action in the absence of the allegedly protected conduct of Alexander.  (Order of September 30, 2005, Dkt. Entry 70, at 2.)  At that time, the only issue before the Court was whether Plaintiff was entitled to summary judgment. The Court was not confronted with the question of whether Plaintiff had adduced sufficient

evidence to show the existence of a causal link between his purportedly protected conduct and actions sufficiently adverse to deter his exercise of a protected right.  Thus, the denial of Alexander's summary judgment motion does not necessarily require denial of the defense motion.  In this case, as thoroughly explained by Magistrate Judge Mannion, Defendants have demonstrated that Plaintiff cannot present evidence sufficient to establish a causal link between the alleged adverse actions and Alexander's pursuit of administrative grievances.  Accordingly, the denial of Plaintiff's partial summary judgment motion does not serve to defeat the defense summary judgment motion.

## II.  <u>CONCLUSION</u>

The mere fact that an inmate files numerous grievances and prison officials take actions with which the inmate disagrees is not sufficient to establish an inference that the prison officials' actions are retaliatory.  All that Alexander has shown in this case is his proclivity to file administrative grievances, the rejections of those grievances, and incidents of ordinary prison life that involve disagreements between an inmate and prison officials.  The evidence, as detailed by Magistrate Judge Mannion, does not suffice to present a triable case of retaliation. Summary judgment is plainly warranted.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND ALEXANDER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO. 3:CV-04-0370** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **JIM FORR, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

   **NOW, THIS 27th DAY OF SEPTEMBER, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

   1.  The Report and Recommendation of Magistrate Judge Mannion filed on March 13, 2006 (Dkt. Entry 77) is **ADOPTED.**

   2.  Defendants' Motion for Summary Judgment is **GRANTED.**

   3.  The claims against the John Doe Defendants are **DISMISSED.**

   4.  The Clerk of Court is directed to enter judgment in favor of the Defendants, and to mark this matter **CLOSED**.

                              **s/ Thomas I. Vanaskie**
                              Thomas I. Vanaskie
                              United States District Judge